**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


**JAMES WEISENBURGER,**

     **Plaintiff,**

**vs.**                                                    **Case No. 2:11-cv-00102**


**JENNIFER STUFFLEBEAN,**
**LEONARD STUFFLEBEAN, and**
**FREDDY DeLAO,**

     **Defendants.**                                    **JURY TRIAL DEMANDED**


<u>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND COMMON LAW TORTS**</u>

COMES NOW Plaintiff James Weisenburger by and through his counsel of record Bach & Garcia LLC (Matthew L. Garcia and George Bach) and hereby brings this pursuant to the Fourth Amendment of the Constitution of the United States, 42 U.S.C. §§ 1983 and 1988, the New Mexico Tort Claims Act, and New Mexico common law for damages resulting from injuries inflicted on him by the Defendants.  As grounds for this Complaint Mr. Weisenburger states as follows:

**I.  JURISDICTION AND VENUE**

1.     Jurisdiction and venue is proper pursuant to common law, and 28 U.S.C. § 1331. Through his Complaint the Plaintiff expressly alleges claims turning on a federal question.

2.     On information and belief, all parties are New Mexico residents.

3.     The Plaintiff has satisfied the notice requirements set forth in NMSA 1978, § 41-4-16 of the New Mexico Tort Claims Act.

## II. PARTIES

4.     Mr. Weisenburger is now and was at the time of the acts and omissions complained of a resident of New Mexico.  At all times material to this Complaint, Mr. Weisenburger was employed by the New Mexico State Veterans' Home ("NMSVH") in Truth or Consequences New Mexico.

5.     Defendant Jennifer Stufflebean is now and was at the time of the acts and omissions complained of a resident of New Mexico. At all times material to this Complaint, Ms. Stufflebean was employed by the NMSVH in Truth or Consequences New Mexico.

6.     Defendant Leonard Stufflebean is now and was at time of the acts and omissions complained of a resident of New Mexico. At all times material to this Complaint, deputy Stufflebean was employed by the Sierra County Sheriff's Department.  Further, at all times material to this Complaint deputy Stufflebean was acting in the course and scope of his employment and under color of state law. He is sued in is individual capacity.

7.     Defendant Freddy DeLao is now and was at time of the acts and omissions complained of a resident of New Mexico. At all times material to this Complaint, Mr. DeLao was employed by the New Mexico State Police.  Further, at all times material to this Complaint Mr. DeLao was acting in the course and scope of his employment and under color of state law. He is sued in is individual capacity.

2

### III. FACTUAL BACKGROUND

**A. Ms. Stufflebean is Repeatedly Disciplined During Her Period of Employment With the New Mexico State Veterans' Home.**

8.    In December of 2007, Mr. Weisenburger took a job with the NMSVH in Truth or Consequences New Mexico as the RN Manager/House Supervisor.

9.    On September 15, 2008, Defendant Jennifer Stufflebean was hired by the NMSVH as a nurse.

10.    During her tenure as a nurse at NMSVH, hospital administrators repeatedly disciplined Ms. Stufflebean.

11.    Although Mr. Weisenburger did not participate in the decision-making process regarding disciplinary decisions, he was frequently asked to deliver letters of reprimand to NMSVH employees.

12.    Mr. Weisenburger was asked on more than one occasion to deliver a notice of contemplated disciplinary action to Ms. Stufflebean.

13.    In October 2009 Ms. Stufflebean left work early claiming that she was ill.

14.    Ms. Stufflebean did not apprise Mr. Weisenburger, who was her supervising nurse at the time, that she was leaving work early as required by NMSVH policy.  As a result of Ms. Stufflebean's failure to follow NMSVH policy, hospital staff was unable to determine whether patients had received necessary medications or other treatment.

15.    Mr. Weisenburger reported Ms. Stufflebean's departure to the NMSVH administrator, and he sent an email to the director of nursing advising her of the problem.

16.    On December 7, 2009, Ms. Stufflebean received a notice that she was to be suspended for four days as a result of her actions.

17.     Only three days before receiving notice that she would be suspended for her wrongful conduct, Ms. Stufflebean filed a complaint with the New Mexico Department of Health Human Resource Bureau ("HRB") claiming Mr. Weisenburger had sexually harassed her.

18.     On January 29, 2010 the HRB sent Mr. Weisenburger a letter stating that "[t]he allegations of sexual misconduct and harassment were not substantiated."

19.     On March 24, 2010, Ms. Stufflebean was terminated from her employment with NMSVH based on its findings that Ms. Stufflebean had falsified records and neglected NMSVH residents.

**B.  The Events Preceding Mr. Weisenburger's Unlawful Arrest.**

20.     On February 12, 2010 Ms. Stufflebean, deputy Stufflebean, and two of their friends Robert Del Valle and Gail Del Valle went out for dinner and drinks.  According to Mr. Del Valle they began the evening around 5:00 P.M. at an establishment called Los Arcos Steak and Lobster House ("Los Arcos").

21.     The group returned to the Del Valle residence thereafter.

22.     Deputy Stufflebean left the group around 7:15 P.M. to begin his shift as a Sierra County Sheriff's Deputy.  In an interview with officer DeLao, deputy Stufflebean stated that "he departed the Del Valle residence at approximately 7:15-7:30 pm back to his residence to get ready for work.  He advised his wife and friends to call him if they needed a ride and to have fun."

23.     Around 7:30 P.M. Mr. Del Valle, Ms. Del Valle, and Ms. Stufflebean went to the Elephant Butte Inn and continued drinking.  The group also had cocktails at the Ivory Tusk. Mr. Del Valle, Ms. Del Valle, and Ms. Stufflebean concluded their evening at Raymond's Lounge and had a few more drinks.

24.     After the friends left Raymond's Lounge. Mr. Del Valle, Ms. Del Valle, and Ms. Stufflebean decided to go "hot-tubbing."

25.     At approximately 9:45 P.M., Mr. and Ms. Del Valle stopped at the Stufflebean residence so that Ms. Stufflebean could change into swimming attire and get some towels.  Mr. and Ms. Del Valle waited outside Ms. Stufflebean's house for ten or fifteen minutes.

26.     When Ms. Stufflebean did not come outside to Mr. Del Valle's vehicle, Mr. Del Valle went to check on her.  According to a statement he made to Officer DeLao, Mr. Del Valle suspected that Ms. Stufflebean may have "passed out" from excessive consumption of alcohol.

27.     Mr. Del Valle went and knocked on Ms. Stufflebean's door.  When Ms. Stufflebean answered, Mr. Del Valle stated that it looked like she had been laying down, and that she "had probably had enough to drink."

28.     Mr. and Ms. Del Valle left Ms. Stufflebean's residence and returned to their home.

29.     Between 10:00 P.M. and 10:30 P.M. Ms. Stufflebean made a call to a fellow NMSVH employee John Curtis.  Mr. Curtis answered the call and spoke with Ms. Stufflebean. Mr. Curtis noticed that Ms. Stufflebean was intoxicated.

30.     During that call Ms. Stufflebean inquired whether Mr. Curtis "wanted to come out and slip into a Jacuzzi with her."

31.     Mr. Curtis refused stating that he was married and unable to do that. Ms. Stufflebean responded by stating that she was "dressed well" and "look[ing] pretty good."

32.     At approximately 10:21 P.M., deputy Stufflebean called Mr. Del Valle and stated that he could not locate Ms. Stufflebean.  He also told Mr. Del Valle that the residence was locked up and that Ms. Stufflebean's purse and cellular phone were inside their residence.

33.    Deputy Stufflebean learned that his wife, Ms. Stufflebean, and Mr. Curtis had been communicating during the evening.

34.    Around 11:00 P.M., deputy Stufflebean left an angry voicemail on Mr. Curtis's phone wanting to know why Mr. Curtis had been in contact with his wife.

35.    Deputy Stufflebean used Ms. Stufflebean's phone to place the call to Mr. Curtis.

36.    Shortly after deputy Stufflebean left a voicemail with Mr. Curtis, he spoke with Mr. Del Valle.

**C.  Mr. Weisenburger is unlawfully arrested.**

37.    At approximately 11:19 P.M., deputy Stufflebean phoned his friend, deputy Stewart Johnson.  According to dispatch records, deputy Stufflebean advised deputy Johnson that his home had been broken into and that his wife, Ms. Stufflebean, had been battered.

38.    Dispatch records indicate show that deputy Stufflebean identified Mr. Weisenburger as the perpetrator of the crime.

39.    Deputy Stufflebean had conducted no investigation to determine whether Mr. Weisenburger had actually done anything wrong.

40.    Deputy Stufflebean called dispatch and had an all points bulletin ("APB") put out for Weisenburger.

41.    Deputy Johnson radioed dispatch and specifically requested assistance from New Mexico State Police Officer Freddy DeLao.

42.    Through dispatch, other law enforcement officials learned of deputy Stufflebean's call to deputy Johnson.  Among those law enforcement officials was Sergeant J. Morgan.

43.    According to his supplemental incident narrative, Sergeant Morgan arrived at the Stufflebean residence at 11:19 P.M.  Upon his arrival, Sergeant Morgan "proceeded around the

residence checking doors and windows but found everything was locked." Sergeant Morgan further noted that he looked for "signs where the suspect had waited for the victim."

44. Sergeant Morgan stated that he "found no indication of a struggle having occurred" nor did he find any footprints. Sergeant Morgan also reported that the ground appeared to be "undisturbed by recent foot traffic except for right next to the home."

45. After finding no evidence that someone had broken into the Stufflebean residence or any sign of a struggle, Sergeant Morgan contacted dispatch. He learned that Ms. Stufflebean had departed her residence and walked approximately 2.1 miles from the Stufflebean's home to the Del Valle residence.

46. When Sergeant Morgan arrived at the Del Valle residence a Truth or Consequences police officer, Karen Kuchan, was already there. Officer Kuchan took photographs of Ms. Stufflebean's injuries, which Ms. Stufflebean claimed had been caused by Mr. Weisenburger.

47. Shortly after Sergeant Morgan arrived at the home of Mr. and Ms. Del Valle, deputy Stufflebean and officer Freddy DeLao arrived.

48. According to his affidavit for arrest warrant, officer Freddy DeLao became involved in the investigation after deputy Johnson advised officer DeLao "of a possible domestic which was occurring at [deputy Stufflebean's house.]"

49. Immediately upon entering the Del Valle residence officer DeLao had the following exchange with deputy Stufflebean and Sergeant Morgan:

> **Deputy Stufflebean:** This son of a [expletive deleted] [expletive deleted] attacked her up at the house. He's got our [expletive deleted] house keys too. It's Jim Weisenburger. He works up at the [expletive deleted] veterans' home. She had a [expletive deleted] sexual harassment complaint against him. And this is [expletive deleted] retaliation. He

lives out in [expletive deleted] Las Palomas somewhere.  And he drives a brand new CJ7.

**Sergeant Morgan:**  That means it's your baby cause I can't go out there. If you don't mind handling it.

**Officer DeLao:**  No.  No biggie.

**Sergeant Morgan:**  Just tell me what you need and I'll get it.

**Officer DeLao:**  Ok.

50.    Sergeant Morgan concluded by telling deputy Stufflebean that they were going to "crack heads."

51.    Officer DeLao spoke with deputy Stufflebean.   Deputy Stufflebean informed officer DeLao that he first learned of the attack around 11:18 P.M.

52.    Deputy Stufflebean then identified Mr. Weisenburger as the perpetrator of a crime even though he was without any credible reason to believe that Mr. Weisenburger had done anything unlawful.

53.    Deputy Stufflebean did not inform officer DeLao of the information he had regarding the phone conversations between Ms. Stufflebean and Mr. Curtis.  Deputy Stufflebean also failed to inform officer DeLao that he had stopped by his house at around 10:21 P.M. and that his wife was not home at that time.

54.    Deputy Stufflebean intentionally withheld this information in order to facilitate the unlawful arrest and prosecution of Mr. Weisenburger.

55.    Thereafter, officer DeLao spoke with Ms. Del Valle.  Ms. Del Valle informed officer De Lao that Ms. Stufflebean stated "the guy from the sexual harassment lawsuit" had attacked her.  Ms. Del Valle told officer DeLao that Ms. Stufflebean said Mr. Weisenburger "kind of came at her from behind."

56. Officer DeLao spoke with Mr. Del Valle. Mr. Del Valle told officer DeLao that Mr. Weisenburger was between fifty and sixty years old. Mr. Del Valle described Mr. Weisenburger as "a big guy" with a ponytail and rimmed glass. He told officer DeLao that Mr. Weisenburger had "salt and pepper hair – mostly salt." Mr. Del Valle also apprised officer DeLao that Mr. Weisenburger was a veteran.

57. Mr. Del Valle described Mr. Weisenburger's car for officer DeLao.

58. Mr. Del Valle informed Officer DeLao of the group's whereabouts during the night as described in paragraphs 20-27 above.

59. At around 11:30 P.M. emergency medical staff arrived on scene. Deputy Stufflebean told officer DeLao that he will personally transport Ms. Stufflebean to the hospital.

60. According to the affidavits he submitted to the court, Officer DeLao began interviewing Ms. Stufflebean at the hospital at 1:36 A.M.

61. During that interview, Ms. Stufflebean told officer DeLao that she went out with deputy Stufflebean, Robert Del Valle, and Gail Del Valle to Los Arcos around 5:00 P.M. She explained that she had several glasses of wine in an amount that was quite a bit for her.

62. Ms. Stufflebean also told officer DeLao that they left Los Arcos around 7:00 PM or 7:30 and that the Del Valle's dropped both her and deputy Stufflebean off at their house.

63. Ms. Stufflebean said her husband left the home for his shift sometime before 8:00 P.M. Ms. Stufflebean told officer DeLao that after deputy Stufflebean left, she went outside for a cigarette. A conversation between ensued between Ms. Stufflebean and officer DeLao regarding the attack:

> **Ms. Stufflebean:** That's when I was attacked from behind. And I caught a glimpse of the person that I did file a sexual harassment complaint against at work.

> **Officer DeLao:**  So what time did you go out to smoke after your husband had left?

> **Ms. Stufflebean:**  I would say between eight and eight thirty.

64.     After Ms. Stufflebean gave these statements, a long pause is heard on the audio recording of officer DeLao's interview with Ms. Stufflebean.   Thereafter, Officer DeLao provided Ms. Stufflebean with the following instructions.

> **Officer DeLao:**  Ok.  What I'm going to do, as you're giving me a statement I need to get a really good statement so I'm going to stop you and them I'm going to ask you some questions so we can just define a little bit if we can if we can't not a big deal.

65.     Officer DeLao then revisited Ms. Stufflebean's description of the attack:

> **Officer DeLao:**  When you were attacked, was it from the front?

> **Ms. Stufflebean:**  Yes, in the beginning.

> **Officer DeLao:**  And you saw your attacker?

> **Ms. Stufflebean:**  Yes.  It was very apparent it was Jim Weisenburger ...

> ….

> **Officer DeLao:**  Now when you saw him was there any words exchanged were there any gestures?

> **Ms. Stufflebean:**  Nothing.

> **Officer DeLao:**  Nothing. Okay.  Could you tell me what he was wearing?

> **Ms. Stufflebean:**  I know his hair was in a dorky uh like braided he's like sixty something years old.  You know he's like balding and he'll take his hair and braid it.  But no I was in shock I didn't stop to think oh what are you wearing.

> **Officer DeLao:**  He wasn't wearing a cap or nothing.  You saw the ponytail and everything.

66.     Ms. Stufflebean then went on to tell officer DeLao that Mr. Weisenburger walked up to her and pushed her.  Ms. Stufflebean stated that she pushed Mr. Weisenburger back.  She continued:

> **Ms. Stufflebean:**  I yelled stop and probably you know what are you doing here.  I never seen this man at my house before.  ... Had my husband been there he probably would have killed him on the spot.
>
> **Officer DeLao:**  Okay.  So after you pushed him back and yelled stop.  What happened?
>
> **Ms. Stufflebean:**  I said "what do you want."  He said something about me filing the sexual harassment complaint "how dare you" you know something like that and the proceeded to beat the [expletive deleted] out of me.  The next thing I know I'm on the ground.

67.     Ms. Stufflebean then went on to tell officer DeLao that Mr. Weisenburger beat her unconscious.

68.     Ms. Stufflebean stated that after she regained consciousness she began to look for her phone. According to the statement she gave to officer DeLao, after she found her phone Ms. Stufflebean called her husband.  When her husband did not answer she called her friend Robert Del Valle.  When he did not answer Ms. Stufflebean walked to Mr. Del Valle's house.

69.     Ms. Stufflebean never contacted 911.

70.     Ms. Stufflebean told officer DeLao that Mr. Weisenburger had never been to her house.  She stated that it was her believe that Mr. Weisenburger did not know where she lived.

71.     Ms. Stufflebean apprised officer DeLao that her sexual harassment claim against Mr. Weisenburger had been found unsubstantiated.

72.     Ms. Stufflebean said that she tried to fight back but that Mr. Weisenburger was 6'3" and she is only 5'4".

73.    Officer DeLao left the hospital room telling Ms. Stufflebean to have Deputy Stufflebean give him a call.   Officer DeLao told Ms. Stufflebean that he would be the one handling the case.

**D.  Officer DeLao submits an affidavit for an arrest warrant and a search warrant to the Court that is rife with misinformation and omissions of material fact.**

74.    On February 13, 2010, officer DeLao submitted an affidavit to the Sierra County Magistrate Court seeking an arrest for Mr. Weisenburger.    Each of the affidavits contained the same statement of facts in support of the warrant application.

75.    Officer DeLao represented to the court that Mr. Weisenburger should be arrested for assault, aggravated battery, and intimidation of a witness.

76.    In addition to an arrest warrant, officer DeLao submitted an affidavit requesting a search warrant of Mr. Weisenburger's home and property.  In that affidavit officer DeLao stated that he had reason to believe that the person and property of James Weisenburger contained evidence of an aggravated battery including "blood, hair, fibers, fingerprints, documentation of injuries on the person of James Weisenburger, trace evidence, notes and/or hand-written or other documents relevant to the sexual harassment allegation regarding Ms. Stufflebean and James Weisenburger, [and] a key ring with a pink colored miniature flashlight with the work "skill" on it[.]"

77.    The facts provided in his affidavit in support of his request for a search warrant were identical to those provided in officer DeLao's affidavit for arrest warrant of Mr. Weisenburger.

78.    In drafting his affidavit for an arrest warrant and search warrant, officer DeLao knowingly made false statements and omissions of material fact that created a falsehood when he applied for the warrants at issue in this case.

79. To begin with, officer DeLao did not apprise the court that Ms. Stufflebean was extremely intoxicated.

80. Moreover, officer DeLao intentionally excluded statements of the other persons with whom he met in order to hide the numerous inconsistencies in Ms. Stufflebean's story. These omissions include:

- Ms. Stufflebean told officer DeLao that she and deputy Stufflebean had been dropped off together by Mr. Del Valle at their home between 7:00 P.M. and 7:30 P.M. However, deputy Stufflebean told officer DeLao that he left his wife at the Del Valle's home. Mr. Del Valle also stated that Ms. Stufflebean remained at his residence when deputy Stufflebean departed to begin his shift;

- Ms. Stufflebean said she was attacked by Mr. Weisenburger between 8:00 P.M. and 8:30 P.M. while Mr. Del Valle stated unequivocally that he dropped Ms. Stufflebean off at her home around 9:45 P.M.;

- Ms. Stufflebean claimed that she was attacked from behind. She told Ms. Del Valle that she was attacked from behind and Ms. Del Valle reported this to Officer DeLao. Ms. Stufflebean also personally informed DeLao that she had been attacked from behind;

- Officer DeLao knew that deputy Stufflebean had initially reported to dispatch that "his house had been broken into and his wife battered." Officer DeLao also knew that the Stufflebean home was deemed secure by Sergeant Morgan;

- Ms. Stufflebean's description of Mr. Weisenburger as "very tall and very thin" is inconsistent with Mr. Del Valle's description of Mr. Weisenburger; and

- Ms. Stufflebean said that no words were exchanged with her attacker, but then later stated that Mr. Weisenburger had told her he was attacking her because she filed a sexual harassment complaint against him.

81. Officer DeLao also made false statements in his affidavit for an arrest and search warrant. For example, officer DeLao stated that he initially learned that Ms. Stufflebean had been attacked "[o]n February 13, 2010 at approximately 0045 hours." However, dispatch records along with officer DeLao's belt tape reveal that officer DeLao arrived at the Del Valle

residence around 11:30 P.M. on February 12, 2010 – more than one hour before he claims to have learned of the events giving rise to this Complaint.

82.     Officer DeLao intentionally omitted other material facts that would have undermined the probable cause determination:

- Law enforcement found no sign of a struggle at the Stufflebean's home;

- Ms. Stufflebean was intoxicated;

- Ms. Stufflebean was unable to describe what Mr. Weisenburger was wearing;

- Ms. Stufflebean was unable to describe Mr. Weisenburger's vehicle;

- When officer DeLao made contact with Ms. Stufflebean she was not wearing the same clothes (i.e. pajamas) that Mr. Del Valle stated he last saw her in;

- Ms. Stufflebean first made reported to her husband that she had been attacked at approximately 11:15 P.M. on February 12, 2010 – three hours after the time she claimed Mr. Weisenburger attacked her;

- Ms. Stufflebean never called the 911 emergency operator even though she was initially unable to make contact with her husband; and

- Officer DeLao never examined Ms. Stufflebean's clothes for signs of a struggle.

83.     Thereafter, officer DeLao filed supplemental reports regarding Ms. Stufflebean's purported attack.

84.     In each of these reports, officer DeLao failed to include knowledge he had regarding the inconsistencies in Ms. Stufflebean's story and which are identified in paragraph 68 of this Complaint.

85.     In each of these reports officer DeLao falsely stated that he initially made contact with Ms. Stufflebean at 12:45 A.M. on February 13, 2010.

86.     In each of these reports, officer DeLao intentionally omitted the other material facts that would have undermined the probable cause determination and which are identified in paragraph 71 of this Complaint.

87.     Officer DeLao filed a criminal complaint charging Mr. Weisenburger with assault, aggravated battery, and intimidation of a witness.

88.     Assault is a petty misdemeanor and is punishable by up to six months imprisonment and/or a $500 fine.  Aggravated battery is a misdemeanor punishable by up to one-year imprisonment and a $1,000 fine.  Intimidation of a witness is a third degree felony punishable by up to three years in prison and a $5,000.00 fine.

89.     Mr. Weisenburger was forced to hire a lawyer to defend against the false charges that officer DeLao had instigated against him.

**E.  Mr. Weisenburger is prosecuted for crimes he did not commit, and the criminal complaint against him is dismissed.**

90.     Based on the false and misleading affidavit submitted officer DeLao, Mr. Weisenburger's home and vehicles were searched.

91.     Mr. Weisenburger suffered property damage as a result of the unlawful search.

92.     Based on the false and misleading affidavit submitted officer DeLao, Mr. Weisenburger was arrested on February 15, 2010 as he was starting his shift at the NMSVH.

93.     Mr. Weisenburger was arrested in front of his colleagues at the NMSVH.

94.     Mr. Weisenburger was forced to pay a bond for his release.

95.     The court placed restrictions on Mr. Weisenburger's liberty as a condition of his release.

96.     Based on the false statement given by Ms. Stufflebean, the false information provided to officer DeLao by deputy Stufflebean, and the shoddy affidavit submitted by officer DeLao, Mr. Weisenburger was wrongfully prosecuted for attacking Ms. Stufflebean.

97.     During his prosecution, Mr. Weisenburger offered affidavits of two friends residing in Silver City, New Mexico.  These persons testified that Mr. Weisenburger stayed at their home in Silver City, New Mexico from February 12, 2010 through February 13, 2010.

98.     Mr. Weisenburger also submitted to a polygraph examination pertaining to his whereabouts on February 12, 2010 and February 13, 2010.  Mr. Weisenburger told the polygraph examined that he was in Silver City, New Mexico on the evening that Ms. Stufflebean was purportedly attacked.

99.     The examiner found "no deception indicated" and that the probability that Mr. Weisenburger was being untruthful was less than 1%.

100.    On May 6, 2010, the deputy district attorney dismissed the case against Mr. Weisenburger "in the best interest of justice."

## FEDERAL CONSTITUTIONAL CLAIMS

### Count I – Unlawful Arrest and Imprisonment
### (Freddy DeLao)

101.    The preceding paragraphs are incorporated as if fully stated herein.

102.    Mr. Weisenburger had a Fourth Amendment right to be free from unjustified imprisonment and arrest.

103.    Officer DeLao violated Mr. Weisenburger's Fourth Amendment right to be free from unjustified imprisonment and arrest by knowingly or recklessly falsifying and omitting evidence when he submitted his affidavit for the arrest of Mr. Weisenburger.

104.    In submitting his affidavit to the Sierra County Magistrate Judge, officer DeLao knowingly and deliberately provided the Court with incorrect information and made material omissions that would have negated probable cause for an arrest warrant to issue.

105.    Officer DeLao exhibited a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger.

**Count II – Due Process**
**(Freddy DeLao)**

106.    The preceding paragraphs are incorporated as if fully stated herein.

107.    All of the actions taken by Defendant DeLao and referred to herein deprived Mr. Weisenburger to be free of the deprivation of liberty without due process of law.

108.    Officer DeLao violated Mr. Weisenburger's Fourteenth Amendment right by knowingly or recklessly falsifying and omitting evidence when he submitted his affidavit for the arrest of Mr. Weisenburger.

109.    Officer DeLao exhibited a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger.

**Count III – Unlawful Search**
**(Freddy DeLao)**

110.    The preceding paragraphs are incorporated as if fully stated herein.

111.    Deputy Stufflebean violated Mr. Weisenburger's constitutional rights by knowingly or recklessly falsifying and omitting evidence when he submitted his affidavit for the search of Mr. Weisenburger's property.

112.    In submitting his affidavit to the Sierra County Magistrate Judge, officer DeLao knowingly and deliberately provided the Court with incorrect information and made material omissions that would have negated probable cause for a search warrant to issue.

113.    Officer DeLao exhibited a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger.

### Count IV – Malicious Prosecution
### (Freddy DeLao)

114.    The preceding paragraphs are incorporated as if fully stated herein.

115.    Mr. Weisenburger had a Fourth Amendment right to be free of prosecution without probable cause.

116.    Officer DeLao violated Mr. Weisenburger's right to be free from malicious prosecution by filing a criminal complaint that contained factual allegations that were not true and which officer DeLao had no reason to believe were correct.

117.    Officer DeLao violated Mr. Weisenburger's Fourth Amendment right to be free from malicious prosecution by filing a criminal complaint without probable cause to believe that Mr. Weisenburger had committed a crime.

118.    Officer DeLao purposefully withheld exculpatory evidence to facilitate the wrongful prosecution of Mr. Weisenburger.

119.    The State of New Mexico, through the office of the District Attorney, decided not to prosecute Mr. Weisenburger.

120.    Officer DeLao exhibited a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger.

### Count V – Unlawful Arrest and Imprisonment
### (Leonard Stufflebean)

121.    The preceding paragraphs are incorporated as if fully stated herein.

122.    Mr. Weisenburger had a Fourth Amendment right to be free from unjustified imprisonment and arrest.

123.    Deputy Stufflebean violated Mr. Weisenburger's Fourth Amendment right to be free from unjustified imprisonment and arrest by knowingly or recklessly falsifying and omitting evidence when he submitted his affidavit for the arrest of Mr. Weisenburger.

124.    Deputy Stufflebean acted with the intent to ensure that Mr. Weisenburger would be arrested.

125.    Deputy Stufflebean withheld exculpatory evidence with the intent to have Mr. Weisenburger arrested.

126.    Officer DeLao exhibited a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger.

## STATE LAW TORT CLAIMS

### Count VI – False Arrest & Imprisonment
### (Freddy DeLao and Leonard Stufflebean)

127.    The preceding paragraphs are incorporated as if fully stated herein.

128.    Officer DeLao and deputy Stufflebean caused Mr. Weisenburger to be arrested and imprisoned without probable cause or any other legal justification to do so.

129.    Officer DeLao and deputy Stufflebean made false criminal allegations against Mr. Weisenburger.

130.    90.    The detention of Mr. Weisenburger was not justified or privileged under state law and constituted a false arrest and imprisonment for which immunity has been waived by NMSA 1978, § 41-4-12.

131.    Officer DeLao and deputy Stufflebean acted willfully, recklessly, and wantonly.

### Count VII – Negligence Per Se
### (Jennifer Stufflebean)

132.    The preceding paragraphs are incorporated as if fully stated herein.

133.     NMSA 1978 § 30-39-1 (1989) provides that "it is unlawful for any person to intentionally make a report to a law enforcement agency or official, which report he knows to be false at the time of making it, alleging a violation by another person of the provisions of the Criminal Code."

134.     Ms. Stufflebean violated this statute.

135.     Mr. Weisenburger is within the class of persons sought to be protected by NMSA 1978 § 30-39-1 (1989).

136.     As a direct result of Ms. Stufflebean's negligence per se, Mr. Weisenburger suffered damages including deprivation of liberty, wrongful arrest, unnecessary attorney's fees, bail costs, and emotional distress resulting in damages in an amount to be proven at trial.

137.     The harm and injuries suffered by Mr. Weisenburger are generally of the type the legislature sought to prevent in enacting NMSA 1978 § 30-39-1 (1989).

138.     Ms. Stufflebean acted willfully, recklessly, and wantonly.

### Count VIII – Malicious Abuse of Process
### (Jennifer Stufflebean)

139.     The preceding paragraphs are incorporated as if fully stated herein.

140.     Ms. Stufflebean availed herself of legal recourse against Mr. Weisenburger based on an improper motive and with knowledge that Mr. Weisenburger had not committed a crime.

141.     Ms. Stufflebean utilized legal resources in for an improper purpose – i.e. to have Mr. Weisenburger arrested.

142.     Mr. Weisenburger suffered damages as a result of Ms. Stufflebean's unlawful actions.

143.     Ms. Stufflebean acted willfully, recklessly, and wantonly.

## RELIEF REQUESTED

Mr. Weisenburger respectfully requests that the Court enter judgment in his favor as follows:

1.      Awarding damages, jointly and severally against all defendants, in an amount that the jury determines sufficient to compensate Mr. Weisenburger for the following:

      a.      the loss of liberty Mr. Weisenburger suffered as a result of his unlawful arrest, and imprisonment and as a result of the false charges against him;

      b.      the emotional distress Mr. Weisenburger suffered as a result of his unlawful arrest, detention, and imprisonment and as a result of the false charges against him;

      c.      the legal fees and costs incurred by Mr. Weisenburger in defending the charges against him;

2.      Awarding damages against the defendants in an amount that the jury determines sufficient to compensate Mr. Weisenburger for their tortious conduct;

3.      Awarding punitive damages against the defendants in an amount the jury determines is sufficient to deter the defendant law enforcement officer and other law enforcement officers from acting in a reckless and callous disregard of, or indifference to, the rights and safety of Mr. Weisenburger and others;

4.      Awarding punitive damages against the defendants in an amount the jury determines is sufficient to deter the law enforcement officers and other law enforcement officers from filing false affidavits and from committing other

willful, reckless, or wanton acts that contribute to or result in false arrests and

false imprisonments;

5.      Awarding punitive damages against Ms. Stufflebean in an amount the jury

determines is sufficient to deter her and other persons from acting in a willful,

reckless, and wanton manner and to deter other persons from intentionally making

false criminal accusations against innocent persons;

6.      Awarding reasonable costs and attorneys fees incurred in bringing this action

pursuant to 42 U.S.C. § 1988, to be paid by the defendant police officers; and

7.      Granting such other relief as the court deems just and proper.


Respectfully submitted,

_____
Matthew L. Garcia
George Bach
Bach & Garcia
300 Central SW, Suite 2000
Albuquerque, NM 87102
Phone:  (505) 899-1030
Fax:      (505) 899-1051